UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


EDWARDO JOIEL HINTON,

       Petitioner,

                                   CASE NO. 2:11-CV-10287

  v.                                JUDGE DAVID M. LAWSON

                                   MAGISTRATE JUDGE PAUL J. KOMIVES

BONITA HOFFNER,

       Respondent.[1]

_____/


## REPORT AND RECOMMENDATION


*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     D.    *Sufficiency of the Evidence (Ground I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          1.    *Clearly established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
     E.    *Double Jeopardy (Ground II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
     F.    *Newly Discovered Evidence (Ground III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
     G.    *Ineffective Assistance of Counsel (Ground IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
     H.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . 21
          1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
     I.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

_____

     [1]By Order entered this date, Bonita Hoffner has been substituted in place of Cindi Curtin as the proper respondent in this action.

I.     <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny a certificate of appealability.

II.    <u>REPORT</u>:

A.     *Procedural History*

1.     Petitioner Edwardo Joiel Hinton is a state prisoner, currently confined at the Lakeland Correctional Facility in Coldwater, Michigan.

2.     On July 21, 2008, petitioner was convicted of two counts of armed robbery, MICH. COMP. LAWS § 750.529; two counts of assault with intent to commit murder, MICH. COMP. LAWS § 750.83; assault with intent to maim, MICH. COMP. LAWS § 750.86; first-degree home invasion, MICH. COMP. LAWS § 750.110a(2); two counts of assault with a dangerous weapon (felonious assault), MICH. COMP. LAWS § 750.82; felon in possession of a firearm, MICH. COMP. LAWS § 750.224f; and possession of a firearm during the commission of a felony (felony firearm), MICH. COMP. LAWS § 750.227b, following a bench trial in the Wayne County Circuit Court.  On August 19, 2008, he was sentenced to a term of seventeen to twenty-seven years' imprisonment.

3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.     THE PROSECUTION FAILED TO PRODUCE SUFFICIENT EVIDENCE TO SUPPORT THE TRIAL COURT'S VERDICT ON SEVERAL COUNTS.

II.    THE ASSAULT WITH INTENT TO MURDER AND ASSAULT WITH INTENT TO MAIM CONVICTIONS VIOLATED PETITIONER'S RIGHT TO BE FREE FROM DOUBLE JEOPARDY

III.   THE VERDICT WAS AGAINST THE GREAT WEIGHT OF THE EVIDENCE SINCE THERE WAS NEWLY DISCOVERED EVIDENCE.

2

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Hinton*, No. 287477, 2010 WL 2076930 (Mich. Ct. App. May 25, 2010) (per curiam).

      4.      Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Hinton*, 488 Mich. 900, 789 N.W.2d 438 (2010).

      5.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on January 18, 2011.  As grounds for the writ of habeas corpus, he raises the following claims:

    I.      PETITIONER IS ENTITLED TO AN ENTRY OF A JUDGMENT OF ACQUITTAL DUE TO INSUFFICIENCY OF THE EVIDENCE.

    II.      PETITIONER IS ENTITLED TO AN ENTRY OF JUDGMENT OF ACQUITTAL ON ONE OF THE ASSAULT CHARGES ON MRS. JONES DUE TO DOUBLE JEOPARDY.

    III.      NEWLY DISCOVERED EVIDENCE WARRANTS PETITIONER A NEW TRIAL.

    IV.      INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHERE COUNSEL FAILED TO SEEK SUPPRESSION OF IMPROPER SUGGESTIVE LINEUP ABSENT COUNSEL.

      6.      Respondent filed his answer on August 5, 2011.  He contends that petitioner's claims are either without merit, are state law claims which are non-cognizable on habeas review, or are not exhausted at the state level.

      7.      Petitioner filed a reply to respondent's answer on September 27, 2011.

B.    *Factual Background Underlying Petitioner's Conviction*

      The evidence adduced at trial was accurately summarized in the prosecutor's brief on appeal in the Michigan Court of Appeals:

      On March 5, 2008, at approximately 7:00 p.m., Mozelle and Clarence Jones were in the assisted living home in Detroit they owned and lived in at 13951

3

McDougall in Detroit.  A resident of the house, Carol Joslin and her sister, Diane, were talking with the Joneses in the living room of the house.  Corliss Tolbert was standing in the entrance of the living room.  Two men entered the house through the front door.  One of the men fired a gunshot into the floor and approached Mrs. Jones. The man said, "Ms. Jones. I came here to rob you. Give me the money."  Mozelle Jones identified the man as defendant, Edwardo Hinton.  Defendant was wearing dark clothing with a black skull cap. Mozelle Jones told defendant that she did not have any money.  Defendant took a gun and pointed it at Mozelle Jones's head.  When defendant did this, Mozelle Jones heard the gun click.  Mozelle Jones tried to push defendant away.  Defendant began repeatedly hitting Mozelle Jones with the gun in the face, knocking her to the floor.  The beating injured Mozelle Jones's eye.

The other man approached Clarence Jones while defendant was confronting Mozelle Jones.  The other man demanded money from Clarence Jones. When Clarence Jones told the man he did not have any money, the other man struck Clarence Jones on the left side of the face with a gun.  The other man pointed the gun at Clarence Jones's head and asked for money again.  One of the men reached into Clarence Jones's pockets and removed four dollars.

Defendant said that he was not going to leave the house without taking something so the men grabbed Mozelle Jones's purse.  The purse contained identification cards for Mozelle Jones and the residents of the house, as well as approximately $4000 in cash.  The men also took Mozelle Jones's coat.  As the robbers backed out of the house, one of the men fired four gunshots. Clarence Jones was struck by bullets in the right foot and left arm.  Clarence Jones believed that defendant was the person that fired the shots.

The two men left the house and ran north down the street toward an older model Crown Victoria.  The police were called to the scene. One officer, P.O. Scott Pessina, was directed to a vacant house at 17124 McDougall.  Pessina entered the vacant house and found defendant sitting on a couch on the second floor.  Pessina ordered defendant to lie on the floor. When defendant complied, Pessina saw the butt of a handgun between the cushions of the couch.  Pessina confiscated the gun and arrested defendant.  Defendant was wearing body armor.  Two women in the vacant house with defendant, Esther Davis and Joyce Howard, were also arrested.

On March 7, 2008, Mozelle Jones was asked to view a photographic array to determine if she could identify the robbers. Mozelle Jones identified defendant as one of the robbers.  On March 10, 2008, Mozelle Jones was shown a second photographic array.  Mrs. Jones again identified defendant as one of the robbers.  Clarence Jones viewed a photographic array on March 10, 2008.  The police visited the house to show Diana Joslin and Carol Joslin a photographic array.  Diana and Carol Joslin both identified defendant as one of the robbers.  Tolbert was also shown a photographic array from which she identified defendant as one of the robbers.

The beating to Mozelle Jones's eye caused a loss of eyesight and required laser surgery.  A spent bullet found in the living room was compared to the gun found with defendant.  The gun could not have fired the bullet.

. . . . Defendant presented Esther Davis as a witness.  Davis knew defendant

4

as J or Joiel.  Davis went to 17124 McDougall at 3:00 p.m. on March 5, 2008 to see
defendant.  Davis did not see defendant leave the house from the time she arrived
until he was arrested.  Davis was at the house that day with Derrin Abbott, a girl
named Crystal, and Joyce Howard.  Howard went to another room to sleep at 3:30
p.m., Abbott and Crystal left about 6:30 p.m., and defendant went upstairs to sleep at
5:30 p.m.  Before going to sleep, defendant shared a beer with Davis.

      Latoya Wilson also testified on defendant's behalf.  Wilson knew defendant
as Joe.  Wilson stayed the previous night at the house where defendant was arrested.
Davis and Howard stayed at the house with Wilson and never left the house.  Wilson
testified that she was at the house with defendant on March 5, 2008 from 3:00 p.m.
until she left to go to the store at 7:30 p.m.  Before Wilson left, defendant gave her
money to buy herself a beer.  Defendant and Davis did not drink.  Wilson returned to
the house at 7:45 p.m. and saw that the police were there.

      Derrin Abbott also testified for defendant.  Abbott testified that at 3:00 p.m.
on March 5, 2008, he went with defendant to the house where defendant was arrested.
Abbott left the house at approximately 5:00 p.m.  Abbott returned to the house at
approximately 6:00 p.m. and stayed until 7:45 p.m.  When Abbott returned to the
house at 6:00 p.m., defendant and Davis were drinking beer.  Defendant went upstairs
just before Abbott left.

      On July 21, 2008, the trial court found that the central issue that needed to be
decided at trial was the identification of the robbers.  The court found that the victims
were all generally consistent and all identified defendant as the robber.  Based on the
consistency of the descriptions of the robber, the consistency of the identifications,
defendant's location shortly after the robberies, and the incredibility of the alibi
testimony, Judge Allen found defendant guilty as charged.

Pl.-Appellee's Br. on Appeal, in *People v. Hinton*, No. 287477 (Mich. Ct. App.), at 2-5; *see also*,

Def.-Appellant's Br. on Appeal, in *People v. Hinton*, No. 287477 (Mich. Ct. App.), at 1-13.

C.    *Standard of Review*

      Because petitioner's application was filed after April 24, 1996, his petition is governed by the

provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-

132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Amongst

other amendments, the AEDPA amended the substantive standards for granting habeas relief by

providing:

      (d) An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to any

5

claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d)

reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)).  Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).  The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not

7

require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Sufficiency of the Evidence (Ground I)*

Petitioner contends that the evidence his conviction was based on was insufficient. Aside from the five victims and witnesses from inside the house that identified petitioner as the perpetrator, the police recovered no money, and the spent shell casing found in the house did not come from the gun recovered from petitioner at the time of his arrest. The Court should conclude that petitioner is not entitled to habeas corpus relief on this ground.

1.      *Clearly established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence,

8

draw inferences and resolve conflicting inferences from the record in favor of the prosecution.  "[I]t is the responsibility of the jury–not the court–to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4 (2011) (per curiam). The *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319).   Likewise, a reviewing court "do[es] not make credibility determinations in evaluating the sufficiency of the evidence."  *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also*, *United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution.  *See Jackson*, 443 U.S. at 326.  As the Court has explained, "the only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of bare rationality."  *Coleman*, 132 S. Ct. at 2065.  Under the amended version of § 2254(d)(1) a federal habeas court's review is "twice-deferential."  *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam).  A state court's decision that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference under AEDPA."  *Coleman*, 132 S. Ct. at 2065; *see also*, *Cavazos*, 132 S. Ct. at 4.

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*,

*Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  Thus, "under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law."  *Coleman*, 132 S. Ct. at 2064 (citation omitted) (quoting *Jackson*, 443 U.S. at 324 n.16).

       2.     *Analysis*

Petitioner does not contend that the prosecution failed to establish any particular element of the offenses.  Rather, he contends that there was insufficient evidence to establish his identity as one of the robbers.  Establishing the identity of a perpetrator is always an essential element of any crime. *People v. Oliphant*, 399 Mich. 742, 489, 250 N.W.2d 443 (1976).  Witness testimony as to the identity of a perpetrator is sufficient to prove guilt beyond a reasonable doubt. *People v. Taylor*, Mich. App. 1, 8, 460 N.W.2d 582, 586 (1990).  Further, as explained above, the reviewing court "must respect the executive province of the [fact finder] to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming the [fact finder] resolved all such matters in a manner which supports the verdict." *United States v. Gillock*, 866 F.2d 220, 222 (9th Cir. 1989) (quoting *United States v. Ramos*, 558 F.2d 545, 546 (9th Cir. 1977)).

In petitioner's case, Mr. and Mrs. Jones, Diana and Carol Joslin, and Corliss Tolbert all positively identified petitioner as one of the perpetrators of the March 5, 2008, incident. While there was some confusion regarding Mr. Jones' testimony about which perpetrator committed which act, the facts adduced at trial concluded that petitioner's gun misfired when he attempted to shoot Mrs. Jones at close range in the head, petitioner beat Mrs. Jones with the gun, and the accomplice shot Mr.

Jones. The testimony of the victims and witnesses alone was sufficient to prove beyond a reasonable doubt that petitioner was one of the perpetrators. "Lack of physical evidence does not render the evidence that is presented insufficient." *United States v. Magallanez*, 408 F.3d 672, 681 (10th Cir.2005); *see also*, *O'Hara v. Brigano*, 499 F. 3d 492, 500 (6th Cir. 2007) (victim's testimony alone sufficient even though not corroborated by other witnesses or physical evidence); *United States v. Bieghler*, 198 Fed. Appx. 566, 568 (8th Cir. 2006) ("'[F]orensic evidence' is not required for conviction."). As explained above, witness credibility is solely the province of the trier of fact. A reviewing court may reverse a trier of fact's credibility determinations only where the testimony is incredible as a matter of law, "such as where it was physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all." *United States v. Radziszewski*, 474 F.3d 480, 485 (7th Cir. 2007) (internal quotation omitted); *accord United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009); *United States v. Gadison*, 8 F.3d 186, 190 (5th Cir. 1993). Here, it was not physically impossible for the witnesses to have observed what they claimed to have observed, nor was their testimony contrary to the laws of nature.

In short, as noted above, the *Jackson* standard does not permit "fine-grained factual parsing" of the evidence by a reviewing court, *Coleman*, 132 S. Ct. at 2064, nor does it permit this Court to reweigh the conflicts in the evidence or assess the credibility of the witnesses. The trial court, as the finder of fact, was free to draw any reasonable inferences from the evidence, and to resolve the conflicts in the evidence in favor of the prosecution. In light of the victims' testimony, corroborated by the testimony of other witnesses, the verdict was not "so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065. It follows that the rejection

11

of petitioner's claim by the Michigan Court of Appeals was reasonable, and that petitioner therefore is not entitled to habeas relief on this claim.

E.      *Double Jeopardy (Ground II)*

Petitioner contends that he is entitled to an acquittal of one of the assault charges against Mrs. Jones because conviction on the two charges, assault with intent to murder and assault with intent to maim, violates his right to be free from double jeopardy. The Court should conclude that petitioner is not entitled to habeas corpus relief on this ground.

1.      *Clearly Established Law*

The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Double Jeopardy clause, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784, 794 (1969), provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted). "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." *Shiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339 (1975)).

As noted above, the Double Jeopardy Clause prohibits a state from punishing a defendant twice for the same "offense." However, "[f]or constitutional purposes, it makes no difference that the separate charges against [petitioner] grew out of the same transaction." *Smith v. Sowders*, 848 F.2d 735, 739 (6th Cir. 1988). "Because the substantive power to prescribe crimes and determine

12

punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984 (citations omitted). Thus, the question is whether the Michigan Legislature intended that the attempted shooting of Mrs. Jones and her subsequent beating with the butt of petitioner's gun give rise to separate criminal liability; if so, the "court's inquiry is at an end" and there is no double jeopardy violation. *Id.* at 499 n.8. In making this determination, the Court is bound by the Michigan courts' interpretation of state law. *See Rodgers v. Bock*, 49 Fed. Appx. 596, 597 (6th Cir. 2002); *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

    2.    *Analysis*

    In *Blockburger v. United States*, the Supreme Court enunciated a test to determine when prosecutions may run afoul of double jeopardy protections. When the same offense violates multiple statutes and each statutory offense contains an element that the others do not, then there is no double jeopardy violation. *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Michigan courts have embraced the *Blockburger* test. The Michigan Court of Appeals stated:

> If the legislature clearly intended to impose multiple punishments, the imposition of multiple sentences is permissible regardless of whether the offenses have the same elements, but if the Legislature has not clearly expressed its intent, multiple offenses may be punished if each offense has an element that the other does not.

*People v. McGee*, 280 Mich. App. 680, 683, 761 N.W.2d 743 (2008) (per curiam)(citations omitted). Furthermore, when one crime is complete before the other takes place, even when the crimes share similar elements, there is no double jeopardy violation. *People v. Lugo*, 214 Mich. App., 699, 708, 542 N.W.2d, 921 (1995).

    Michigan law defines assault with intent to murder as follows:

    Any person who shall assault another with the intent to commit the crime of murder,

shall be guilty of a felony, punishable by imprisonment in the state prison for life or any number of years.

MICH. COMP. LAWS § 750.83   It further defines assault with intent to main as follows:

Any person who shall assault another with intent to maim or disfigure his person by cutting out or maiming the tongue, putting out or destroying an eye, cutting or tearing off an ear, cutting or slitting or mutilating the nose or lips or cutting off or disabling a limb, organ or member, shall be guilty of a felony

MICH. COMP. LAWS § 750.86

The assault with intent to murder occurred when petitioner pointed the gun at Mrs. Jones at close range and pulled the trigger. The misfiring gun does not excuse or negate petitioner's intent to kill, a required element of assault with intent to murder. Once petitioner fired the gun, though it misfired, all elements of the crime were met and the crime of assault with intent to murder was complete. After the gun misfired, petitioner began to beat Mrs. Jones on the face and head with the butt of his gun, causing damage to her vision. This action began the separate crime of assault with intent to maim, which concluded when petitioner stopped beating Mrs. Jones.

In petitioner's case, the *Blockburger* test is satisfied because the crimes of assault with intent to murder and assault with intent to maim, while having similar elements, each share an element that the other does not. *Blockburger*, 284 U.S. at 304. Specifically, assault with intent to murder does not necessarily require that a defendant intend to harm an enumerated body part and assault with intent to maim does not necessarily require an intent to kill. *See Hinton*, 2010 WL 2076930, at * 4. Further, as the court of appeals explained, "the assaults for which [petitioner] was convicted were two distinct acts," *id.*, thus raising no double jeopardy violation. Because petitioner's convictions were based on two separate acts, and because they were for separate crimes with distinct elements, the Michigan Court of Appeals's resolution of this claim was reasonable, and petitioner is not entitled to habeas

14

relief.

F.      *Newly Discovered Evidence (Ground III)*

Petitioner next contends that he is entitled to habeas relief because he has newly discovered evidence that should allow for a new trial. The Court should conclude that petitioner is not entitled to habeas relief on this claim, for two reasons.

First, petitioner's claim does not set forth a cognizable basis for habeas relief. A writ of habeas corpus may be granted "only on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, the existence of new evidence, standing alone, is not a basis for granting the writ. As the Supreme Court has explained, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also*, *id.* at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred *constitutional* claim considered on the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial."); *Townsend v. Sain*, 372 U.S. 293, 317 (1963). ("Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Thus, the newly discovered evidence, standing alone, provides no basis for habeas relief.

Further, even if such a claim were cognizable, petitioner's evidence falls far short of that

15

necessary to establish that he is innocent. In *Herrera*, without elaborating further, the Court noted that even if a free-standing claim of innocence were cognizable on habeas review, "the threshold showing for such an assumed right would be extraordinarily high." *Herrera*, 506 U.S. at 417. In *Schlup*, the Court elaborated on the showing required to establish "actual innocence" for purposes of overcoming a procedural bar to consideration of a constitutional claim. The court explained that, to establish actual innocence, the petitioner must "show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327 (internal citation and quotations omitted). Thus, "to be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence that was not presented at trial." *Schlup*, 513 U.S. at 324. "Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996) (citations omitted); *accord Schlup*, 513 U.S. at 324 (referring to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence").

Petitioner's actual innocence claim is based on his own affidavit regarding statements made by one Kevin Pettway. Leaving aside the fact that there is no actual statement from Pettway, only petitioner's hearsay averments regarding statements made by Pettway, new statements from witnesses years after the crime are inherently suspect, *see Schlup*, 513 U.S. at 331, and such statements are to be viewed with "a degree of skepticism." *Herrera*, 506 U.S. at 423 (O'Connor, J., concurring); *see also, McCray v. Vasbinder*, 499 F.3d 568, 574 (6th Cir. 2007) (citing *United States v. Willis*, 257

16

F.3d 636, 645 (6th Cir. 2001). Further, even if such evidence was sufficient to warrant a new trial, the statement by Mr. Pettway does not make it more likely than not that a reasonable factfinder would not have convicted petitioner in light of the new evidence. *Schlup*, 513 U.S. at 327. Petitioner's convictions were supported by multiple witnesses identifying petitioner, as well by his arrest while wearing body armor and being in possession of a handgun shortly after the robbery and within a short distance of it. As noted earlier, witness identification is sufficient evidence to prove guilt beyond a reasonable doubt.

Petitioner raises a non-cognizable habeas claim on this ground. Further, even if this claim were cognizable, it is based on unreliable hearsay evidence that is insufficient to show that no reasonable factfinder would have found petitioner guilty. Based on these factors, the Court should conclude that petitioner is not entitled to habeas corpus relief on this ground.

G.     *Ineffective Assistance of Counsel (Ground IV)*

Finally, petitioner contends that he received ineffective counsel because his trial counsel failed to object to the admission of a photographic array lineup because a corporeal lineup would have been more appropriate. The Court should conclude that petitioner is not entitled to habeas relief on this ground.

1.     *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two

components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed," *Id*. With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective of counsel claim. *see United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness ); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d. 284 (2010). An ineffective assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with

18

scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-90, 104 S.Ct.2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L.Ed.2d. 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d. 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *Id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d. 481 (1997), and when the two apply in tandem, review is "doubly" so. *Knowles,* 556 U.S. at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ----, 129 S.Ct. at 1420. Federal habeas corpus courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 778 (2011) (formatting maintained from original).

2.    *Analysis*

Petitioner contends that he was deprived his constitutional right to effective counsel because his attorney failed to object to the use of a photographic lineup while petitioner was in custody and, instead, insist a live lineup should have been used instead. Petitioner bases this ground on Judge Shapiro's dissent in his direct appeal. *See Hinton*, 2010 WL 2076930, at *5 ("When a defendant is in custody, a corporeal lineup, rather than a photo lineup, must be used" (citing *People v. Kurylczyk*, 443 Mich. 289, 298, 505 N.W.2d 528 (1993)). Judge Shapiro's dissent also notes that there were inconsistencies in the record regarding the appropriateness of the photo lineup's administration to the victims.

19

In order to be granted habeas relief on this ground, petitioner must show that the pretrial photographic array was impermissibly suggestive, not merely that the lineup was conducted via photographs and not live. The prong of this inquiry "questions whether the procedure itself steered the witness to one suspect or another, independent of the witness's honest recollection." *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001). Thus, a lineup is impermissibly suggestive where it "emphasizes the focus on a single individual, thereby increasing the likelihood of misidentification." *United States v. Montgomery*, 150 F.3d 983, 992 (9th Cir. 1998) (internal quotation omitted); *see also, United States v. Wong*, 40 F.3d 1347, 1359-60 (2nd Cir.1994); *Griffin v. Rose*, 546 F.Supp. 932, 936 (E.D. Tenn. 1981), *aff'd*, 703 F.2d 561 (6th Cir. 1982). In short, an identification procedure is suggestive only if it "directs undue attention to a particular" person. *State v. Ramires*, 37 P.3d 343, 350 (Wash. Ct. App. 2002). Thus, a photographic array is impermissibly suggestive if "the picture of the accused, matching descriptions by the witness, so stands out from all of the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit." *United States v. Thai*, 29 F.3d 785, 808 (2d Cir. 1994) (internal quotation omitted).

There are instances where a photo lineup may be permissible when a defendant is in custody. These instances include when it is not possible to arrange a proper lineup, there are an insufficient number of individuals that match the defendant's physical characteristics, the nature of the case requires immediate identification, the witnesses are far from the in-custody defendant, or when the defendant refuses to participate in a lineup and his actions would seek to destroy the value of identification. *People v. Anderson*, 389. Mich 155, n.23, 205 N.W.2d 461 (1973). However, offering no evidence other than mere speculation is not sufficient to entitle a petitioner to habeas relief on an ineffective assistance of counsel claim.

In the present case, petitioner showed no evidence other than mere speculation that the photographic lineup deprived him of his constitutional right to effective counsel. The photographic array in the record shows that all participants were black males of roughly the same age, physical build, and facial features. All participants had short-cropped hair, appeared of stocky body type, and most had facial hair ranging from a goatee to a full beard. Petitioner does not meet the *Strickland* threshold because, even if the lineup were to be removed from the record, several witnesses positively identified him in court. Such identification, as discussed above, is sufficient evidence to convict on the crimes with which petitioner was charged. Therefore, the Court should conclude that petitioner is not entitled to habeas relief on this ground.

H.     *Recommendation Regarding Certificate of Appealability*

    1.     *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.

21

Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.""" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id*., advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.     *Analysis*

If the Court accepts my recommendation on the merits of petitioner's claims, the Court should

22

also conclude that petitioner is not entitled to a certificate of appealability. Petitioner bases his petition on four grounds: that his conviction was based on insufficient evidence, his conviction for both assault with intent to murder and assault with intent to maim constitute double jeopardy, that newly discovered evidence entitles him to relief, and that he received ineffective assistance of counsel for his counsel's failure to object to a photographic lineup.

All four grounds are without merit. There was sufficient evidence under Michigan law to convict petitioner of all counts. Multiple witnesses identified petitioner as one of the robbers at the Jones' home. Furthermore, petitioner's convictions for both assault with intent to murder and assault with intent to maim pass were based on separate assaults and satisfy the *Blockburger* test since each crime contains an element that the other does not. Moreoever, petitioner's claim of newly discovered evidence is not cognizable and is without merit.  Lastly, petitioner has not shown a meritorious suggestive lineup claim such that his counsel's failure to object to the photographic lineup amounted to ineffective assistance.  Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

I.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED.

R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/ Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: July 2, 2013

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Edwardo Hinton and Counsel of Record on this date.

Dated: July 2, 2013                          s/ Lisa C. Bartlett
                                             Case Manager

24